| | | |
|---|---|---|
| **WORLDWIDE AIRCRAFT SERVICES, INC. d/b/a JET ICU,** a Florida Corporation<br><br>Plaintiff,<br><br>v.<br><br>**HEALTH CARE SERVICE CORPORATION,** an Illinois Corporation<br><br>Defendant. | ) | **United States District Court**<br>**Northern District of Illinois**<br>**Eastern Division**<br><br>Case No. 26-cv-12297 |

**COMPLAINT FOR (1) BREACH OF CONTRACT IMPLIED IN FACT AND (2) UNJUST ENRICHMENT (IN THE ALTERNATIVE)**

**General Facts and Background**

Comes Now, WORLDWIDE AIRCRAFT SERVICES, INC., d/b/a Jet ICU, a Florida corporation ("Jet ICU"), pursuant to the Federal Rules of Civil Procedure and hereby files this complaint against defendant HEALTH CARE SERVICE CORPORATION, an Illinois corporation ("HCSC") as follows:

1. Plaintiff WORLDWIDE AIRCRAFT SERVICES, INC. is and was at all times mentioned herein, a Florida corporation with its principal place of business in Hillsborough County, Florida. Said Plaintiff does business as "Jet ICU" and will be referred to hereinafter as "Jet ICU."

2. Jet ICU is and was at all times mentioned herein, a health care provider licensed by the State of Florida to provide air ambulance services. Jet ICU provides air transport, via fixed-wing jet aircraft that are crewed by trained Advanced Life Support ("ALS") medical personnel, for critically ill and injured patients to medical facilities able to treat their conditions. Jet ICU must purchase or lease, periodically inspect, and repair their aircraft in accordance with federal law; maintain a qualified flight crew, medical staff and technicians; and incur other

associated costs to meet the demands of emergency services. Jet ICU's operations as a provider of medical air transport services subject it to state and federal laws and regulations that impose additional costs, expenses, and fees. Additionally, Jet ICU provides or procures ancillary ambulance services such as ground ambulance(s), helicopter ambulance(s), and water ambulance(s) to support its mission and services as needed.

3. Defendant HEALTH CARE SERVICE CORPORATION d/b/a Blue Cross and Blue Shield of Illinois (hereafter "HCSC") was at all times mentioned herein, and now is a health plan/health insurer providing certain benefits to eligible insureds or members under or through the names Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of Oklahoma, Blue Cross and Blue Shield of Montana, and Blue Cross and Blue Shield of New Mexico. HCSC is an Illinois corporation with its principal place of business in Chicago, Illinois.

**Jurisdiction and Venue**

4. Jurisdiction is proper in this District Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that the Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.

5. Pursuant to 28 U.S.C. § 1391, venue is proper in this District Court in that Defendant resides in the District.

## Facts

6. As of January 27th, 2025, HCSC's member/insured/beneficiary with initials C.W. (hereafter "Patient" or "C.W.") was a participant, member, or insured of HCSC and was eligible for benefits or coverage thereunder.[1]

7. On or about January 27th, 2025, Patient was afflicted with an emergency condition that Patient reasonably believed posed an imminent risk of life or limb.

8. As a result of Patient's condition, Patient required, at the request of Patient's then-treating physician, immediate air medical transport for appropriate, necessary, and urgent treatment and a higher level of specialized care.

9. In accord with industry standards and good professional practice, Patient was transported in multiple stages. First, Patient was transported via ALS ground ambulance from the discharging facility in Mexico to the awaiting jet aircraft. Patient was then flown back to the United States. Finally, upon arrival in Fort Lauderdale, Florida, the Patient was once again transported via ALS ground ambulance from the aircraft to the receiving facility for emergency treatment. The instant Complaint concerns Jet ICU's claims for both ALS ground ambulances and the air portion of the transport. Jet ICU's billed charge for this claim was $211,846.00, which constituted usual, customary, and reasonable charges and the reasonable value of these services.

10. Plaintiff is informed and believes, and based thereon alleges that HCSC knew or reasonably should have known about the need to transport Patient, and that such ground and air ambulance care was covered by the Patient's insurance plan/contract and/or state or federal law.

---

[1] Pursuant to the privacy provisions of the federal Health Insurance Portability & Accountability Act ("HIPPA"), Jet ICU has limited its disclosure of the identity of C.W., HCSC participant and patient.

11. At the time services were provided, Jet ICU was not part of HCSC's provider network.

12. Plaintiff is informed and believes, and based thereon alleges that HCSC knew that Jet ICU was not part of HCSC's provider network, and that Jet ICU would charge its usual and customary rate for air and ground ambulance services.

13. Jet ICU billed Defendant and/or its agent, for services rendered, by submitting to HCSC a Health Insurance Claim Form 1500 and other documents necessary to process Jet ICU's request for payment from Defendant. The amount billed represented Jet ICU's own usual and customary rate.

14. Defendant failed to pay Jet ICU's charges for the transport of the Patient by ground and air ambulances for the necessary higher level of care, except for a partial payment of $874.08 applied toward the return ground ambulance transport. Defendant paid nothing toward the initial ground ambulance transport or the air ambulance portion of the transport, leaving a remaining unpaid balance of $210,971.92.

## COUNT ONE
## BREACH OF CONTRACT IMPLIED IN FACT

15. Plaintiff WORLDWIDE AIRCRAFT SERVICES, INC. is and was at all times mentioned herein, a Florida corporation with its principal place of business in Hillsborough County, Florida. Said Plaintiff does business as "Jet ICU" and will be referred to hereinafter as "Jet ICU."

16. Jet ICU is and was at all times mentioned herein, a health care provider licensed by the State of Florida to provide air ambulance services. Jet ICU provides air transport, via fixed-wing jet aircraft that are crewed by trained Advanced Life Support ("ALS") medical personnel, for critically ill and injured patients to medical facilities able to treat their conditions.

Jet ICU must purchase or lease, periodically inspect, and repair their aircraft in accordance with federal law; maintain a qualified flight crew, medical staff and technicians; and incur other associated costs to meet the demands of emergency services. Jet ICU's operations as a provider of medical air transport services subject it to state and federal laws and regulations that impose additional costs, expenses, and fees. Additionally, Jet ICU provides or procures ancillary ambulance services such as ground ambulance(s), helicopter ambulance(s), and water ambulance(s) to support its mission and services as needed.

17. Defendant HEALTH CARE SERVICE CORPORATION d/b/a Blue Cross and Blue Shield of Illinois (hereafter "HCSC") was at all times mentioned herein, and now is a health plan/health insurer providing certain benefits to eligible insureds or members under or through the names Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of Oklahoma, Blue Cross and Blue Shield of Montana, and Blue Cross and Blue Shield of New Mexico. HCSC is an Illinois corporation with its principal place of business in Chicago, Illinois.

18. As of January 27th, 2025, HCSC's member/insured/beneficiary with initials C.W. (hereafter "Patient" or "C.W.") was a participant, member, or insured of HCSC and was eligible for benefits or coverage thereunder.

19. On or about January 27th, 2025, Patient was afflicted with an emergency condition that Patient reasonably believed posed an imminent risk of life or limb.

20. As a result of Patient's condition, Patient required, at the request of Patient's then-treating physician, immediate air medical transport for appropriate, necessary, and urgent treatment and a higher level of specialized care.

21. In accord with industry standards and good professional practice, Patient was transported in multiple stages. First, Patient was transported via ALS ground ambulance from the discharging facility in Mexico to the awaiting jet aircraft. Patient was then flown back to the United States. Finally, upon arrival in Fort Lauderdale, Florida, the Patient was once again transported via ALS ground ambulance from the aircraft to the receiving facility for emergency treatment. The instant Complaint concerns Jet ICU's claims for both ALS ground ambulances and the air portion of the transport. Jet ICU's billed charge for this claim was $211,846.00, which constituted usual, customary, and reasonable charges and the reasonable value of these services.

22. Plaintiff is informed and believes, and based thereon alleges that HCSC knew or reasonably should have known about the need to transport Patient, and that such ground and air ambulance care was covered by the Patient's insurance plan/contract and/or state or federal law.

23. At the time services were provided, Jet ICU was not part of HCSC's provider network.

24. Plaintiff is informed and believes, and based thereon alleges that HCSC knew that Jet ICU was not part of HCSC's provider network, and that Jet ICU would charge its usual and customary rate for air and ground ambulance services.

25. Jet ICU billed Defendant and/or its agent, for services rendered, by submitting to HCSC a Health Insurance Claim Form 1500 and other documents necessary to process Jet ICU's request for payment from Defendant. The amount billed represented Jet ICU's own usual and customary rate.

26. Defendant failed to pay Jet ICU's charges for the transport of the Patient by ground and air ambulances for the necessary higher level of care, except for a partial payment of

$874.08 applied toward the return ground ambulance transport. Defendant paid nothing toward the initial ground ambulance transport or the air ambulance portion of the transport, leaving a remaining unpaid balance of $210,971.92.

27. Plaintiff has regularly rendered emergency services to Defendant and has been regularly reimbursed. Defendant has participated regularly in the claims process with Plaintiff. Plaintiff has submitted no fewer than 70 claims to Defendant HCSC from 2020 to 2026. These claims were submitted to Defendant's trade names Blue Cross and Blue Shield of Oklahoma, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, and Blue Cross and Blue Shield of Montana, all of which are divisions of HCSC.

28. Of these 70+ claims, Defendant has made payments on over 70 percent of the claims. This pattern of conduct, in which Jet ICU renders emergency services to Defendant's members and Defendant processes and pays Plaintiff's claims, reflects that Plaintiff and Defendant agreed that Jet ICU would render emergency services to HCSC's members, and Defendant would reimburse Jet ICU for the reasonable value of its services. This course of conduct has existed over the course of years up to and including the present.

29. The healthcare industry standard for the reimbursement of out of network providers is a rate of the reasonable and customary value of the services.

30. Jet ICU transported C.W. on January 27th, 2025. In accord with industry standards and good professional practice, Patient was transported in multiple stages. First, Patient was transported via ALS ground ambulance from the discharging facility in Mexico to the awaiting jet aircraft. Patient was then flown back to the United States. Finally, upon arrival in Fort

Lauderdale, Florida, the Patient was once again transported via ALS ground ambulance from the aircraft to the receiving facility for emergency treatment.

31. Pursuant to Plaintiff and Defendant's course of conduct and agreement, Jet ICU billed Defendant its usual, customary, and reasonable rates.

32. HCSC failed to reimburse Plaintiff for the reasonable and customary value of its services related to the transport of its insured, C.W., from Mexico to the United States, paying only $874.08 toward the return ground ambulance transport and nothing toward the initial ground ambulance transport or the air ambulance portion of the transport, leaving an unpaid balance of $210,971.92.

33. Based on the parties' course of conduct, as alleged herein, Defendant had a duty to reimburse Jet ICU for the reasonable value of its services.

34. Defendant's failure to reimburse Plaintiff for the value of its services, materially breached the agreement to which Jet ICU and Defendant had agreed, in which Plaintiff Jet ICU provides services to Defendant's insured(s) in return for the payment of its claims by Defendant at a reasonable and customary value of the services provided.

35. Defendant's breach of the parties' agreement actually and proximately caused Plaintiff reasonable and foreseeable damages in the amount of $210,971.92, which constituted the usual, customary, and reasonable value of Jet ICU's services.

36. Jet ICU has performed all obligations required by the parties' agreement, or such obligations were waived by Defendant.

**COUNT TWO**
**(UNJUST ENRICHMENT IN THE ALTERNATIVE)**

As a separate, distinct, alternative count, Plaintiff alleges:

37. Plaintiff WORLDWIDE AIRCRAFT SERVICES, INC. is and was at all times mentioned herein, a Florida corporation with its principal place of business in Hillsborough County, Florida.

38. Jet ICU is and was at all times mentioned herein, a health care provider licensed by the State of Florida to provide air ambulance services. Jet ICU provides air transport, via fixed-wing jet aircraft that are crewed by trained Advanced Life Support ("ALS") medical personnel, for critically ill and injured patients to medical facilities able to treat their conditions. Jet ICU must purchase or lease, periodically inspect, and repair their aircraft in accordance with federal law; maintain a qualified flight crew, medical staff and technicians; and incur other associated costs to meet the demands of emergency services. Jet ICU's operations as a provider of medical air transport services subject it to state and federal laws and regulations that impose additional costs, expenses, and fees. Additionally, Jet ICU provides or procures ancillary ambulance services such as ground ambulance(s), helicopter ambulance(s), and water ambulance(s) to support its mission and services as needed.

39. Defendant HEALTH CARE SERVICE CORPORATION d/b/a Blue Cross and Blue Shield of Illinois (hereafter "HCSC") was at all times mentioned herein, and now is a health plan/health insurer providing certain benefits to eligible insureds or members under or through the names Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of Oklahoma, Blue Cross and Blue Shield of Montana, Blue Cross and Blue Shield of New Mexico.

40. As of January 27th, 2025, HCSC's member/insured/beneficiary with initials C.W. (hereafter "Patient" or "C.W.") was a participant, member, or insured of HCSC and was eligible for benefits or coverage thereunder.

41. On or about January 27th, 2025, Patient was afflicted with an emergency condition that Patient reasonably believed posed an imminent risk of life or limb.

42. As a result of Patient's condition, Patient required, at the request of Patient's then-treating physician, immediate air medical transport for appropriate, necessary, and urgent treatment and a higher level of specialized care.

43. In accord with industry standards and good professional practice, Patient was transported in multiple stages. First, Patient was transported via ALS ground ambulance from the discharging facility in Mexico to the awaiting jet aircraft. Patient was then flown back to the United States. Finally, upon arrival in Fort Lauderdale, Florida, the Patient was once again transported via ALS ground ambulance from the aircraft to the receiving facility for emergency treatment. The instant Complaint concerns Jet ICU's claims for both ALS ground ambulances and the air portion of the transport. Jet ICU's billed charge for this claim was $211,846.00, which constituted usual, customary, and reasonable charges and the reasonable value of these services.

44. Plaintiff is informed and believes, and based thereon alleges that HCSC knew or reasonably should have known about the need to transport Patient, and that such ground and air ambulance care was covered by the Patient's insurance plan/contract and/or state or federal law.

45. At the time services were provided, Jet ICU was not part of HCSC's provider network.

46. Plaintiff is informed and believes, and based thereon alleges that HCSC knew that Jet ICU was not part of HCSC's provider network, and that Jet ICU would charge its usual and customary rate for air and ground ambulance services.

47. Jet ICU billed Defendant and/or its agent, for services rendered, by submitting to HCSC a Health Insurance Claim Form 1500 and other documents necessary to process Jet ICU's request for payment from Defendant. The amount billed represented Jet ICU's own usual and customary rate.

48. Defendant failed to pay Jet ICU's charges for the transport of the Patient by ground and air ambulances for the necessary higher level of care, except for a partial payment of $874.08 applied toward the return ground ambulance transport. Defendant paid nothing toward the initial ground ambulance transport or the air ambulance portion of the transport, leaving a remaining unpaid balance of $210,971.92.

49. Plaintiff has rendered emergency air ambulance services to Defendant and its subsidiaries at least 70 times. This course of conduct constituted a standing request by Defendant to Jet ICU to provide emergency air ambulance services to its members.

50. Defendant is required by contract and/or state or federal law to provide coverage to C.W. for emergency services. Jet ICU's emergency air ambulance services provide a direct benefit to Defendant.

51. Defendant's retention of the benefit of these services without full payment violates the fundamental principles of justice, equity, and good conscience, in that HCSC has been enriched at Jet ICU's expense.

52. As a direct and proximate result of Defendant's unjust retention of this benefit, Jet ICU is entitled to restitution in the amount of $210,971.92, representing the value Defendant has been, and continues to be, enriched.

**WHEREFORE**, Plaintiff Jet ICU respectfully prays for judgment against HCSC for:

1. On Count 1, for damages, to the extent permitted by state or federal law at the time of trial;
2. On Count 2, for disgorgement of all of Defendant's ill-gotten gains unjustly retained by Defendant, in an amount to be determined at trial;
3. For any other such relief the Court deems necessary, just, and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial for all causes of action so triable.

October 7, 2026

Michael Brannigan, Esq.
The Law Office of Michael Brannigan P.A. Florida Bar No. 0075256
1511 N. Westshore Blvd Ste 650,
Tampa, FL 33607
MichaelBrannigan@jeticu.com
Legal@jeticu.com
(352) 796-2540
(352) 796-2549 (fax)

*Counsel for Plaintiff Worldwide Aircraft Services, Inc. d/b/a Jet ICU*